UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JOHN DOE,

                        Plaintiff,

                                                       3:23-cv-1600
v.                                               (GTS/ML)

ITHACA COLLEGE; and BRYAN ROBERTS,

                        Defendants.
_____

APPEARANCES:                                 OF COUNSEL:

SLATER SLATER SCHULMAN LLP         ERIN PEAKE, ESQ.
   Counsel for Plaintiff
488 Madison Avenue, 20th Floor
New York, NY 10022

HODGSON RUSS LLP                THOMAS S. D'ANTONIO, ESQ.
   Counsel for Defendant Ithaca College
1800 Bausch & Lomb Place
Rochester, NY 14604

THE GLENNON LAW FIRM P.C.         PETER J. GLENNON, ESQ.
   Counsel for Defendant Bryan Roberts    ASHLEY WESTBROOK, ESQ.
160 Linden Oaks Drive
Rochester, NY 14625

GLENN T. SUDDABY, United States District Judge

## <u>DECISION and ORDER</u>

      Currently before the Court, in this Title IX action filed by John Doe ("Plaintiff") against

Ithaca College and Bryan Roberts ("Defendants"), are the following two motions: (1) Defendant

Roberts' motion to dismiss the claims against him for failure to state a claim pursuant to Fed. R.

Civ. P. 12(b)(6); and (2) Defendant Ithaca College's partial motion to dismiss some of the claims

against it for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).   (Dkt. Nos. 17, 18.)

For the reasons set forth below, Defendant Roberts' motion is granted in part and denied in part, and Defendant Ithaca College's motion is granted.

## I.      RELEVANT BACKGROUND

### A.      Plaintiff's Complaint

Generally, in his Complaint, Plaintiff asserts five claims: (1) a claim of negligence against both Defendants premised on a failure to protect him from harm, abuse, assault, and sexual, physical and emotion abuse committed by Defendant Roberts and other faculty and staff of Defendant Ithaca College; (2) a claim that Defendant Ithaca College[1] violated Title IX of the Education Amendments of 1972 by being deliberately indifferent to evidence and reports of sexual assault and harassment of students by its faculty and staff; (3) a claim that both Defendants acted negligently in the hiring, retention, training, direction, and supervision of employees; (4) a claim of negligent infliction of emotion distress ("NIED") against both Defendants; and (5) a claim of intentional infliction of emotional distress ("IIED") against both Defendants.   (*See generally* Dkt. No. 1.)

### B.      Parties' Briefing on Defendants' Motions to Dismiss

#### 1.      Defendant Roberts' Motion to Dismiss

##### a.      Defendant Roberts' Memorandum of Law

Generally, in his motion to dismiss, Defendant Roberts makes six arguments.   (Dkt. No. 17, Attach. 1.)   First, Defendant Roberts argues that Plaintiff has not sufficiently pled that he owed a duty to Plaintiff that would support a negligence claim, because colleges and universities

---

[1]      Although Plaintiff's Complaint does not state whether this claim is asserted against both Defendants, the allegations that make up this claim address only actions by Defendant Ithaca College.   Further, as Defendant Roberts correctly argues in his motion, such a claim would not be properly asserted against him as an individual.   (Dkt. No. 17, at 13-14.)   The Court therefore construes the Complaint as having asserted this claim against only Defendant Ithaca College.

do not have a general legal duty to protect students, and Plaintiff has failed to plead any specific duty that Defendant Roberts owed him.   (*Id.* at 9-10.)

Second, Defendant Roberts argues that Plaintiff has not sufficiently pled a claim of negligence against him under a theory of vicarious liability or the superior officer doctrine, because he has not pled facts alleging that Defendant Roberts is an employer or a superior officer of Defendant Ithaca College, and has especially failed to include any allegation regarding Defendant Roberts' level of responsibility or job duties.   (*Id.* at 10-12.)

Third, Defendant Roberts argues that Plaintiff has failed to state a claim against him for negligent hiring, retention, training, supervision, or direction, because Plaintiff has failed to allege facts plausibly suggesting that Defendant Roberts was an employer or that he supervised or exercised any control over the other individuals alleged in the Complaint to have engaged in inappropriate conduct with Plaintiff.   (*Id.* at 12-13.)

Fourth, Defendant Roberts argues that Plaintiff cannot assert a Title IX claim against him as an individual.   (*Id.* at 13-14.)

Fifth, Defendant Roberts argues that Plaintiff has failed to state claims for NIED and IIED, because (a) he has not pled allegations relating to conduct of the type that courts have found to be extreme or outrageous, and (b) he has not pled allegations suggesting that he had an unreasonable endangerment of or fear for his physical safety as a result of the alleged conduct. (*Id.* at 14-17.)

Sixth, Defendant Roberts argues, in the alternative, that Plaintiff's claims for NIED and IIED must be dismissed, because they are duplicative of his other negligence claims in that the same set of allegations is the basis of all those claims.   (*Id.* at 17-18.)

### b.       Plaintiff's Opposition Memorandum of Law

Generally, in opposition to Defendant Roberts' motion, Plaintiff makes six arguments. (Dkt. No. 27, Attach. 1.)   First, Plaintiff argues that he has sufficiently pled a duty of care to state a claim of negligence, because Defendant Roberts, as Associate Dean, had control over many aspects of Plaintiff's life at the college by virtue of his position and therefore "had a duty to exercise his power over Plaintiff wisely."   (*Id.* at 7.)

Second, Plaintiff argues that he has sufficiently pled that Defendant Roberts is a superior officer of Defendant Ithaca College, noting that, although "Plaintiff's only understanding of [Defendant Roberts'] day-to-day duties at this early stage in litigation is that he held the title of 'Associate Dean,' and that he was one of the highest-ranking individuals at the Ithaca College Park School," "[h]is title alone gives inference that he likely had some degree of power within the institution"; Plaintiff also asserts that Defendant Roberts "was the head of the entire Park School" and "the highest-ranking individual at the Park School."   (*Id.* at 7-9.)

Third, Plaintiff argues that he has properly stated a claim for negligent hiring, retention, training, supervision, and direction, because he has alleged that Defendant Roberts was in a position of power at Defendant Ithaca College based on his job title of Assistant Dean but admits that he does not have access to information that "may prove or disprove this level of control" and is "unaware of the power that Roberts had as it relates to personnel decisions."   (*Id*. at 9-10.) He argues, however, that "the fact that other perpetrators may have been working in other departments is even more of a reason to provide discovery as to their job duties."[2]   (*Id.*)

---

[2]       Plaintiff additionally argues that, "upon information and belief, as Associate Dean Roberts sat on multiple search and hiring committees for the school, including the trans-Atlantic search committee."   (Dkt. No. 27, Attach. 1, at 10.)   As will be discussed below in Part III.A.1 of this Decision and Order, Plaintiff (who has at all times been represented by counsel in this action) did not include such allegation in his Complaint.

Plaintiff further argues that "notice has been properly pled," Defendant Roberts has "failed to address why this cause of action should be dismissed as to the training and direction of Defendant's staff," and the issue "is better left for Summary Judgment, once Plaintiff has been availed to his right to relevant discovery."  (*Id.* at 10.)

Fourth, Plaintiff argues that he has properly stated a claim for NIED because (a) contrary to Defendant Roberts' assertion, the existence of extreme and outrageous conduct is not a required element of such claim, (b) he has alleged that Defendant Roberts was a superior officer and breached the duty of care he owed to Plaintiff as a student, and (c) there is no requirement that Plaintiff plead there was a threat to his physical safety and, even if there is, he has made such allegations given that sexual assault is by its nature physically harmful.  (*Id.* at 11.)

Fifth, Plaintiff argues that he has also properly stated a claim for IIED because the conduct alleged is plausibly extreme and outrageous and such findings are for a jury to determine in any event.  (*Id.* at 12.)

Sixth, Plaintiff argues that his NIED and IIED claims are not duplicative of one another or of his other negligence-based claims, because the elements of each claim are different.  (*Id.* at 12-13.)

### c.    Defendant Roberts' Reply Memorandum of Law

Generally, in reply, Defendant Roberts makes six arguments.  (Dkt. No. 28.)  First, Defendant Roberts argues that Plaintiff has not supported his assertion of a duty to exercise power "wisely" with any legal authority, and the Court is not required to accept allegations that are merely legal conclusions; and Defendant Roberts further argues that Plaintiff has not challenged his argument that there is no duty by a college or its employees to act *in loco parentis*

of its students.   (*Id.* at 5-6.)

Second, Defendant Roberts argues that Plaintiff has not sufficiently pled vicarious liability or that Defendant Roberts qualifies as a superior officer, because the cases he cites involve individuals who were at the highest levels of their organization, whereas Defendant Roberts is merely one Associate Dean of several at the Park School, who works under the actual Dean of that school as well as other higher-ranking officials such as the President and the Provost of the college.   (*Id.* at 6-7.)

Third, Defendant Roberts argues that Plaintiff has failed to state a claim for negligent hiring, retention, supervision, and training, because he has not alleged facts plausibly suggesting that Defendant Roberts is an employer, or that Defendant Roberts had notice of any relevant conduct by another individual over whom he had authority.   (*Id.* at 8-9.)

Fourth, Defendant Roberts argues that Plaintiff has failed to state a claim for IIED, because he has provided nothing but conclusory statements to suggest the conduct alleged rises to the level of extreme and outrageous.   (*Id.* at 9-11.)

Fifth, Defendant Roberts argues that Plaintiff has failed to state a claim for NIED, because he has not plausibly alleged that Defendant Roberts owed him a duty or that Defendant Roberts' conduct caused unreasonable endangerment to or fear for his physical safety.   (*Id.* at 11-13.)

Sixth, Defendant Roberts argues that Plaintiff's NIED claim is duplicative of his other negligence-based claims, because those claims all rest on the same facts and seek the same damages as do those other claims.   (*Id.* at 13-14.)

### 2.   Defendant Ithaca College's Partial Motion to Dismiss

a.      **Defendant Ithaca College's Memorandum of Law**

Generally, in its motion to dismiss, Defendant Ithaca College makes five arguments. (Dkt. No. 18, Attach. 1.)   As an initial matter, the Court notes that Defendant Ithaca College explicitly states that it is not seeking to dismiss Plaintiff's Title IX claim against it as part of its current motion.   (*Id.* at 5 n.1.)

First, Defendant Ithaca College argues that Plaintiff has not plausibly stated any negligence-based claims, because he has failed to sufficiently allege that it owed Plaintiff any duty relevant to the circumstances.   (*Id.* at 12-15.)   Specifically, Defendant Ithaca College argues that New York has rejected any duty *in loco parentis* of colleges towards their students, and, in any event, claims such as those Plaintiff brings regarding sexual harassment on a college campus are governed instead by Title IX, which requires a showing of more than mere negligence to establish liability.   (*Id.*)

Second, Defendant Ithaca College argues that Plaintiff's negligent hiring and retention claim must fail, because he has not plausibly alleged that it had notice of any employee's propensity to commit sexual abuse, and conclusory allegations that Defendant Roberts' use of Grindr (a social media dating application used primarily by men seeking sexual relationships with other men) was public and that his abuse of students was "common knowledge" are too vague and insufficient to plausibly allege knowledge of improper sexual behavior by Defendant Roberts or others.   (*Id.* at 16-17.)

Third, Defendant Ithaca College argues that Plaintiff's vicarious liability claims must fail as a matter of law, because it cannot be held liable for an intentional act performed outside the scope of employment like sexual assault or harassment under a theory of *respondeat superior*.

(*Id.* at 17-18.)

Fourth, Defendant Ithaca College argues that Plaintiff has failed to plausibly state a claim for NIED, because he has not and cannot allege any special duty owed to him by Defendant Ithaca College given that his relationship with the college was the same as its relationship with all other students, and this claim is in any event duplicative of his other negligence claims.   (*Id.* at 18-20.)

Fifth, Defendant Ithaca College argues that Plaintiff's IIED claim also must be dismissed, because he has not pled conduct that is extreme and outrageous, he has failed to plead any facts supporting an inference that Defendant intended to cause him distress, and this claim is also duplicative of his other claims.   (*Id.* at 20-22.)

### b.      Plaintiff's Opposition Memorandum of Law

Generally, in opposition to Defendant Ithaca College's motion, Plaintiff makes five arguments.   (Dkt. No. 26, Attach. 1.)   First, Plaintiff argues that his Title IX claim does not subsume his negligence claims and he is entitled to pursue all of those claims together.   (*Id.* at 9-10.)

Second, Plaintiff argues that he has properly alleged notice of sexual abuse by staff and faculty at Defendant Ithaca College sufficient to support his claim for negligent hiring, retention, training, direction, and supervision, because he has alleged that one of the highest-ranking individuals in the Park School (Defendant Roberts) engaged in such behavior, that various relevant individuals were publicly using Grindr on campus, and that he anonymously reported the abuse by Defendant Roberts to "Associate Dean Jack Bryant."   (*Id.* at 10-12.)   Plaintiff further argues that Defendant Ithaca College has failed to address the sufficiency of this claim

8

related to direction, supervision, or training, explaining that "Associate Dean Bryan Roberts and other staff members named were clearly negligently directed and trained in the arena of sexual harassment as they either participated in unwanted and improper conduct or failed to report it." (*Id.*)

Third, Plaintiff argues that he has sufficiently alleged vicarious liability through the superior officer doctrine because, as "the head of the entire Park School," Defendant Roberts was a superior officer and his participation in the alleged abusive conduct therefore renders Defendant Ithaca College liable.   (*Id.* at 12-13.)

Fourth, Plaintiff argues that his NIED claim is neither duplicative nor meritless because the elements of that claim are different than those of his other claims, and because Defendant Ithaca College had a special duty to Plaintiff after he made a report to the Title IX office regarding the alleged abuse.   (*Id.* at 13-15.)

Fifth, Plaintiff argues that he has sufficiently pled his IIED claim because, as to intent, he has at least pled that Defendant Ithaca College disregarded a substantial probability of causing severe emotional distress in its actions of disregarding the "significant chance that Plaintiff would be bullied and put to shame were his name to be leaked to the student body," "the fact that numerous deans and faculty members targeting students for sex would lead to situations of harassment and assault," and "the probability that if it did not properly train staff on sexual harassment, people would get hurt."   (*Id.* at 15-16.)

### c.      Defendant Ithaca College's Reply Memorandum of Law

Generally, in reply, Defendant Ithaca College makes seven arguments.   (Dkt. No. 30.) First, Defendant argues that Plaintiff cannot survive a motion to dismiss by claiming to have a

need to conduct discovery, but instead must have sufficient information to be able to plead plausible claims before he becomes entitled to conduct any such discovery.  (*Id.* at 4-5.)

Second, Defendant Ithaca College argues that Title IX is the proper avenue under which to assess Plaintiff's claims of harassment, and Plaintiff has made no compelling argument otherwise.  (*Id.* at 5.)

Third, Defendant Ithaca College argues that Plaintiff has not adequately pled notice of the alleged harassment, because neither participation in the conduct by Defendant Roberts nor the alleged report to Mr. Bryant constitutes notice to Defendant Ithaca College, given that (a) there is no allegation to plausibly suggest that Mr. Bryant, as an associate professor, was a sufficiently high-ranking individual within the college who had authority to take corrective measures such that his knowledge can be imputed to Defendant Ithaca College, (b) Plaintiff has not pled, beyond vague conclusory generalities, that any high-ranking officer of the college was aware of employees using Grindr, let alone using it to target students, and (c) Plaintiff has not pled facts suggesting that Defendant Ithaca College knew of any similar prior acts of sexual misconduct by Defendant Roberts or any other individual.   (*Id.* at 6-7.)

Fourth, Defendant Ithaca College argues that, although Plaintiff did not plead that it was negligent in directing or training its employees in reporting sexual abuse, any obligation to report sexual abuse of a student would inherently arise under the scope of that individual's employment and would therefore would preclude Plaintiff's claim, because an obligation to report exists only under Title IX, not the common law.  (*Id.* at 7-8.)

Fifth, Defendant Ithaca College argues that Plaintiff's claims dependent on the superior officer/corporate complicity doctrine must fail because, as was already argued, Defendant

Roberts was not a superior officer and the acts he allegedly committed were not committed within the course of his employment given that sexual harassment is outside the scope of employment.   (*Id.* at 8-11.)

Sixth, Defendant Ithaca College argues that Plaintiff's NIED claim must be dismissed, because it is duplicative of his other negligence claims, and that Plaintiff's attempt to manufacture a special duty based on his report of conduct to the Title IX office is insufficient, because the duty to investigate those claims then arose under Title IX (not the common law) and Plaintiff has not pled reliance on any promise by Defendant Ithaca College to investigate his claims that was related to the harm here.   (*Id.* at 11-12.)

Seventh, Defendant Ithaca College argues that Plaintiff's IIED claim must also be dismissed, because Plaintiff has not pled any knowledge of harmful circumstances that Defendant Ithaca College disregarded.   (*Id.* at 12-13.)

## II.   LEGAL STANDARDS GOVERNING A MOTION TO DISMISS

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim.   *Jackson v. Onondaga Cty.*, 549 F. Supp.2d 204, 211 nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J.) (adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, some elaboration regarding that ground is appropriate.   Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to

relief." Fed. R. Civ. P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp. 2d at 212 n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp. 2d at 212 n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp. 2d at 212 n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp. 2d at 213 n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an

appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1.   *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).   In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."   *Twombly*, 127 S. Ct. at 560-61, 577.   Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim.   *Id*. at 555-70.   The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]."   *Id*. at 555.   More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true.   *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).   "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . .   [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief."   *Iqbal*, 129 S. Ct. at 1950 (internal quotation marks and citations omitted).   However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id*., it "does not impose a probability

requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions.   Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice.   *Iqbal*, 129 S. Ct. at 1949 (internal citations and alterations omitted).   Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."   *Id.*

Finally, a few words are appropriate regarding what documents are considered when a dismissal for failure to state a claim is contemplated.   Generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case.[3]

---

[3]       *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and

III.    ANALYSIS

A.    **Whether Plaintiff Has Plausibly Stated a Claim of Negligent Hiring, Retention, Supervision, and Training**

After careful consideration, the Court answers this question in the negative for the reasons stated in Defendants' memoranda of law.   *See supra,* Parts I.B.1.a, c and I.B.2.a, c, of this Decision and Order.   To those reasons, the Court adds the following analysis.

"To establish a cause of action based on negligent hiring, retention, supervision, and training of an employee, a plaintiff must demonstrate that the 'employer knew or should have known [that] the employee[] [had] a propensity for the conduct which caused the [plaintiff's] injury.'"   *Olsen v. Butler*, 227 A.D.3d 916, 918 (N.Y. App. Div. 2d Dep't 2024) (quoting *Bumpus v. New York City Tr. Auth.*, 47 A.D.3d 653, 654 [N.Y. App. Div. 2d Dep't 2008]).   "'Allegations that a defendant had actual knowledge of prior acts by an employee similar to those alleged in the complaint satisfy the notice element.'"   *Olsen*, 227 A.D.3d at 918 (quoting *Moore Charitable Found. V. PJT Partners, Inc.*, 40 N.Y.3d 150, 159 [N.Y. 2023]).   Actual knowledge is not required, however.   *Moore Charitable Found.*, 40 N.Y.3d at 158-59.   "The

---

documents incorporated by reference in the complaint. . . .   Where a document is not incorporated by reference, the court may neverless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . . However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.   It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.") [internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

notice element is also satisfied if 'a reasonably prudent employer, exercising ordinary care under the circumstances, would have been aware of the employee's propensity to engage in the injury-causing conduct.'"   *Olsen*, 227 A.D.3d at 918 (quoting *Moore Charitable Found.*, 40 N.Y.3d at 158-59).

### 1.   Defendant Roberts

Plaintiff's Complaint appears to assert a claim for negligent hiring, retention, supervision, and training against Defendant Roberts, yet it is devoid of any factual allegations that would plausibly suggest that Defendant Roberts was an "employer" or that he had any authority regarding hiring, retaining, supervising, or training any of the relevant non-defendant individuals that allegedly harassed and/or sexually abused Plaintiff.   (*See generally* Dkt. No. 1, Attach. 1.) Those individuals include Mr. Trunzo (Associate Director for Residential Life and Judicial Affairs), Mr. Greene (Director of Senior Student Teacher Placements), and Mr. Stebbins (Lead Cashier of Dining Services).   (*Id.*, at ¶¶ 9-12.)   There are no factual allegations plausibly suggesting that any of these individuals worked in the Park School or were specifically hired, supervised, or trained by Defendant Roberts.   (*See generally id.*)

Notably, as to the only named individual who, by his or her title, can be reasonably inferred to have been a professor/employee within the Park School itself, Mr. Bryant (Associate Professor and Degree Program Director of Writing for Film, TV, and Emerging Media), Plaintiff does not allege that Mr. Bryant harassed or sexually abused and/or assaulted him, or that Mr. Bryant had ever harassed or sexually abused and/or assaulted students in the past; rather, he alleges only that he connected with Mr. Bryant on Grindr, that Mr. Bryant told Plaintiff that he (Mr. Bryant) had had sexual relationships with Ithaca College students previously,[4] and that

---

[4]      As will be discussed further below related to the claim against Defendant Ithaca College,

Plaintiff reported to Mr. Bryant that he was in an unwelcome, unsafe, or uncomfortable sexual relationship with Defendant Roberts but that Defendant Bryant did not report that information to anyone at Defendant Ithaca College.   Plaintiff has therefore not alleged that Mr. Bryant engaged in relevant conduct that would support a claim related to negligent hiring, retention, supervision, or training of Mr. Bryant by either Defendant.[5]   Moreover, again, there are also no factual allegations plausibly suggesting that Defendant Roberts specifically had any input in hiring, retaining, supervising, or training Mr. Bryant even if he is a faculty member at the Park School, much less that he was Mr. Bryant's "employer."

Plaintiff's only response to Defendant Roberts' argument that he was not an "employer" with responsibility over any of these individuals is that (1) he "was in a position of power at Ithaca College, as can be inferred by his job title," and (2) although "Defendant states that he was not in a position of control over the other named perpetrators, . . . pre-discovery, Plaintiff has no access to the Ithaca College records which may prove or disprove this level of control," and that "Plaintiff cannot assume that as an Associate Dean, he had no duty whatsoever to supervise what was going on in his own Park School."   (Dkt. No. 27, Attach. 1, at 10.)   Plaintiff further states that he "is unaware of the power that Roberts had as it relates to personnel decisions," and "the fact that other perpetrators may have been working in other departments is even more of a reason to provide discovery as to their job duties."   (*Id.*)

Plaintiff's response makes clear that his assertion of some sort of supervisory role over

---

a propensity to engage in consensual sexual relationships with students does not equate to a propensity to sexually harass or sexually abuse and/or assault students, and it is harassment/abuse, not consensual sexual conduct, that underlies Plaintiff's claims in this matter.

[5]      Notably, Plaintiff does not allege facts plausibly suggesting that teaching-level faculty such as Mr. Bryant had any common law, contractual, or statutory duty to report student concerns about unsafe relationships with faculty or staff to Defendant Ithaca College.

the other individuals by Defendant Roberts is purely speculative; and mere speculation is insufficient to meet his burden at this stage.   *See Watson Labs, Inc. et al. v. Forest Labs., Inc. et al.*, 101 F.4th 223, 235 (2d Cir. 2024) (reiterating that, under the plausibility standard, "the allegations must 'raise a right to relief above the speculative level'") (quoting *Twombly*, 550 U.S. at 555).   Again, it is only by showing that he can assert a plausible claim that Plaintiff becomes entitled to discovery; he cannot use this lawsuit as a fishing expedition for evidence that may or may not substantiate his speculations unless he has first met that threshold.[6]

Because Plaintiff has not plausibly alleged that Defendant Roberts was an "employer" of the relevant individuals or had any authority over them regarding hiring, retention, supervision, or training, this claim is dismissed as to Defendant Roberts.

### 2.        Defendant Ithaca College

Plaintiff also asserts a claim for negligent hiring, retention, supervision, and training against Defendant Ithaca College.   In his Complaint, Plaintiff alleges that Defendant Ithaca College breached its various duties to conduct appropriate and proper hiring, screening,

---

[6]        In his opposition memorandum of law, Plaintiff also states that, "upon information and belief, as Associate Dean Roberts sat on multiple search and hiring committees for the school, including the trans-Atlantic search committee."   (Dkt. No. 27, Attach. 1, at 10.)   As an initial matter, Plaintiff did not include this allegation in his Complaint, and cannot now informally amend his complaint through asserting new allegations in his opposition memorandum of law. *See Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (declining to consider an allegation that appeared for the first time in a represented plaintiff's memorandum of law in opposition to a motion to dismiss); *accord Fitzsimons v. New York City Dist. Council of Carpenters*, 22-815, 2024 WL 221550, at *2 (2d Cir. Jan. 22, 2024) (citing *Soules v. Conn. Dep't of Emergency Servs. & Public Prot.*, 882 F.3d 52, 56 [2d Cir. 2018]).   The Court therefore need not consider this improper allegation.   Notwithstanding, consideration of this allegation would not alter the Court's conclusion; the fact that—especially upon only "information and belief"—Defendant Roberts may have been involved in some hiring decisions or committees does not plausibly suggest that he was involved in the hiring of any of the relevant individuals, nor does it suggest that he had any supervisory or training authority over those individuals after they were hired.

placement and retention of employees and to adequately supervise, direct and train those employees by being "negligent, careless, and reckless in the manner in which they conducted their hiring, screening, and retention of staff and hired and retained employees and/or staff who failed to properly supervise and protect the students who had been entrusted to them. (Dkt. No. 1, Attach. 1, at ¶¶ 150-59.)

Addressing first the component of this claim related to hiring, screening, direction, and training, the Complaint contains no factual allegations plausibly suggesting why Plaintiff believes Defendant Ithaca College failed to meet any duty regarding those actions. As to hiring and screening, the Complaint does not include any allegations that any of the relevant individuals (including Defendant Roberts) engaged in the same or similar conduct before they were hired by Defendant Ithaca College, or that Defendant Ithaca College had knowledge of any such past conduct at the time those individuals were hired or screened for their employment. As to directing and training, Plaintiff has provided no allegations regarding what types of training related to sexual harassment or sexual assault are provided to employees of Defendant Ithaca College, or any indication that such training was either insufficient or not provided to the relevant individuals. Plaintiff's reliance on an argument to the effect that 'this would not have happened if training had been provided' is simply too speculative to meet his plausibility burden. (Dkt. No. 26, Attach. 1, at 11.)

As to retention of the relevant employees, Plaintiff has not provided allegations regarding any propensity (much less a known propensity) on the part of Defendant Roberts or the other named individuals who Plaintiff alleges sexually harassed, assaulted, or abused him to engage in such behavior. The only allegations that could be read to even remotely support such a

propensity are those stating that (1) Mr. Bryant told Plaintiff that he had previously had sexual relationships with students of Ithaca College, (2) throughout the spring 2022 semester, Defendant Roberts "continuously" used Grindr while on campus looking to sexually engage with students, and (3) Defendant Roberts' manipulation and sexual abuse of Plaintiff "became an open secret around campus" near the end of the spring 2022 semester and "his sexual abuse of students was common knowledge amongst students, staff, and other leadership."   (Dkt. No. 1, Attach. 1, at ¶¶ 51, 56, 69, 127.)   However, the fact that Mr. Bryant and Defendant Roberts may have sought and engaged in sexual relationships with students does not suggest a propensity to engage in *sexual abuse or harassment* of students, especially given that Plaintiff's allegations regarding that contact with other students does not suggest such contact was nonconsensual or unwanted.

Importantly, Plaintiff is alleging that he was sexually abused and harassed by Ithaca College faculty and staff members, not merely that Defendant Roberts and other Ithaca College staff engaged in consensual activities that are improper under Defendant Ithaca College's rules and policies regarding intimate relationships between employees and students.   Whether those individuals were violating the College's intimate relationship policy is a distinct question from whether they were sexually abusing or harassing students; and only the latter is relevant to Plaintiff's asserted claims regarding propensity to engage in the same or similar conduct, because consensual sexual activity is not "similar" to sexual abuse or sexual harassment.   Put simply, although there are perhaps ethical questions implicated by a college faculty member's choice to engage in sexual conduct with students, engaging in consensual sexual conduct does not suggest a propensity to engage in tortious sexual abuse or harassment.   *See Moore Charitable Foundation*, 40 N.Y.3d at 159 (noting that, although "the former habits [drinking and gambling

20

problems] may be unprofessional or irresponsible in a financial adviser, and may warrant some degree of oversight or discipline, [] they are not acts of dishonesty [related to the relevant tort of fraud] or indicative of a proclivity to mislead or intentionally harm others").

Moreover, the fact that Mr. Bryant and Defendant Roberts were engaging in sexual relationships with students–consensual or not–would not inherently suggest that Defendant Ithaca College was or should have been aware of that conduct.   The fact that Defendant Roberts and others "publicly" used Grindr on campus does not lead to a plausible inference that Defendant Ithaca College should have known of their use of that platform, much less that it should have known that those individuals were specifically using that platform to engage in sexual abuse or harassment as opposed to consensual conduct; there are no allegations that Defendant Ithaca College was, or should have reasonably been, monitoring or aware of that activity merely because Grindr is a public platform, or that Defendant Ithaca College was indeed aware that any of the relevant individuals used Grindr.   Although Plaintiff states that Grindr is "as easily accessible as Facebook or Google," and that Defendant Ithaca College would have to know what it was being used for because "Grindr's own website homepage currently features five men in their underwear" and "in practice, is used for sexual hookups," such statements fail to be persuasive for the same reasons already discussed, namely that there is nothing in Plaintiff's factual allegations that plausibly suggests that Defendant Ithaca College was aware that any of the individuals used Grindr, or that using Grindr, even on campus, is inherently indicative of sexual abuse or harassment of students, or even of the pursuit of sexual relationships with students given that there are also other faculty, staff, and presumably community members present on campus.   Nor does Plaintiff offer any allegations to suggest that

21

an individual user's settings or activity (i.e., whether they had set their age range as low as 19 or 20 years old as implicated here, or who they are matched with or talking to) are public and/or visible to other users or viewers of the platform in a way that would have alerted Defendant Ithaca College to interactions with students that might need to be investigated further even if they were able to view the public Grindr profiles of the relevant individuals. Simply put, in and of itself, mere use of Grindr by faculty and staff on campus is insufficient to place Defendant Ithaca College on reasonable notice that those individuals were engaged in sexual harassment or abuse of students or similar conduct such that it would have been reasonably aware of a propensity of any of those individuals to engage in such conduct.

As to more specific notice of the relevant conduct, the allegations that Defendant Roberts' alleged sexual abuse of Plaintiff and other students was an "open secret" or "common knowledge" are simply too vague to sustain Plaintiff's plausibility burden as to Defendant Ithaca College.[7] Most importantly, these allegations do not plausibly suggest which "staff" or "leadership" were aware of Defendant Roberts' sexual abuse of Plaintiff or other students or how they came by that knowledge. Although the Court is required to accept the Plaintiff's allegations as true at this stage, it does not need to accept allegations that are merely conclusory. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("[A]lthough a court must accept as true all of the allegations contained in the complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory

---

[7]     Although Plaintiff cites authority for the point of law that causes of action alleging negligent hiring, retention or supervision are not required to be pled with specificity, that point of law is part of a New York procedural standard. (Dkt. No. 26, Attach. 1, at 10.) However, it is Fed. R. Civ. P. 12(b)(6) and the *Twombly* and *Iqbal* standards that apply to the Court's sufficiency review here, which, as was discussed above, dictates that the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]" when assuming the allegations are true. *Twombly*, 127 S. Ct. at 555.

statements, do not suffice."); *see also Simon v. Smith & Nephew, Inc.*, 18 F. Supp. 3d 423, 427 (S.D.N.Y. 2014) (finding that vague and conclusory allegations that the defendant caused a metal liner to be used with a separate system were insufficient to survive a motion to dismiss without "additional factual amplification").

Plaintiff alleges that he told Mr. Bryant about Defendant Roberts' conduct in January 2022, but offers no factual allegations plausibly suggesting that Mr. Bryant's knowledge can be directly imputed to Defendant Ithaca College.   Specifically, in the context of a negligent supervision claim, "[w]hether the employee's knowledge may be imputed to the employer hinges upon whether that knowledge was *acquired* while the employee was acting within the scope of their employment."   *BL Doe 5 v. Fleming*, 229 A.D.3d 1076, (N.Y. App. Div. 4th Dep't, 2024) (citing *Center v. Hampton Affiliates, Inc.*, 66 N.Y.2d 782, 784 [N.Y. 1985]) (emphasis in original).   Plaintiff alleges that he informed Mr. Bryant about the relationship with Defendant Roberts through a conversation the two had after they connected on Grindr.   (Dkt. No. 1, Attach. 1, ¶¶ 49-53.)   Nothing in these allegations suggests that Mr. Bryant was acting in the scope of his employment when this conversation took place, and therefore Mr. Bryant's knowledge cannot be imputed to Defendant Ithaca College.   Nor has Plaintiff alleged facts plausibly suggesting that Mr. Bryant had any duty to inform Defendant Ithaca College of the information received by Plaintiff during a private conversation outside the scope of his employment.

The only other report Plaintiff alleges making to anyone at Ithaca College was to Mr. Lamendola (who he alleges was the Assistant Coordinator of the Center for Career Exploration and Development) in "Spring 2023," but Plaintiff does not allege facts from which it can be determined whether this conversation occurred within the scope of Mr. Lamendola's

employment; Plaintiff notably does not provide any factual allegations regarding where or how this conversation took place.   (Dkt. No. 1, Attach. 1, at ¶ 90.)

Even if this conversation could be, for the sake of this motion, construed as imputing notice of Defendant Roberts' alleged conduct on Defendant Ithaca College, it is not clear precisely when the conversation occurred.   The Complaint states that Defendant Ithaca College's Title IX office received an anonymous report from another student about Plaintiff's relationship with Defendant Roberts in May 2023, which led to Plaintiff's filing a Title IX report against Defendant Roberts and an official investigation into Defendant Roberts' conduct being initiated, along with Human Resources investigations into the other non-defendant individuals. (Dkt. No. 1, Attach. 1, at ¶¶ 93-94, 99.)   Plaintiff has therefore plausibly alleged that Defendant Ithaca College had notice of Defendant Roberts' alleged conduct by May 2023; but it is impossible based on the current allegations to assess whether notice existed sooner as a result of the conversation with Mr. Lamendola (assuming the Court could plausibly construe the Complaint as alleging that conversation occurred within the scope of his employment, a finding the Court does not make), because Plaintiff alleges only that it occurred in "Spring 2023" (which could be either before or contemporaneous with the Title IX report).

For these reasons, Plaintiff has not plausibly alleged that Defendant Ithaca College had any notice of a propensity of Defendant Roberts to engage in the type of tortious conduct alleged here until May 2023, after which time Defendant Ithaca College met with Plaintiff and was investigating his Title IX complaint.   The only conduct that Plaintiff alleges occurred after that notice is Defendant Roberts' conduct of "harassing [Plaintiff] by messaging him, calling him repeatedly, and contacting him on numerous social media platforms, telling Plaintiff he must not

24

tell the truth," and "threatening Plaintiff's scholarship, access to education, and future opportunities in the media industry."  (Dkt. No. 1, Attach. 1, at ¶¶ 95-96.)   Following the investigation, Defendant Ithaca College found that Defendant Roberts had violated policies on intimate relationships and sexual harassment, and Defendant Roberts "departed" Ithaca College. (*Id.* at ¶¶ 105-107.)   Despite alleging that Defendant Roberts continued to attempt to speak with him (seemingly not in person) and threatened his academics and career, Plaintiff does not allege that Defendant Roberts continued to engage in sexual harassment or assault or that he suffered further emotional or other harm as a result of Defendant Roberts' conduct after Defendant Ithaca College acquired notice of his actions.   As a result, Plaintiff has not plausibly alleged a claim of negligent hiring, retention, supervision, or training against Defendant Ithaca College.

For all of the above reasons, Plaintiff has not alleged facts to plausibly suggest either that Defendant Roberts (or the other non-defendant individuals) had a propensity to engage in sexual abuse or harassment of students or that Defendant Ithaca College knew or should have known of any such propensity.   Plaintiff's claim against Defendant Ithaca College for negligent hiring, retention, supervision, and training is therefore dismissed for failure to state a claim upon which relief can be granted.

> **B.** **Whether Plaintiff Has Plausibly Stated a Claim of Negligence**

After careful consideration, the Court answers the above question in the negative for the reasons stated in Defendants' memoranda of law.   *See supra,* Parts I.B.1.a, c and I.B.2.a, c, of this Decision and Order.   To those reasons, the Court adds the following analysis.

As an initial matter, the Court rejects Defendant Ithaca College's argument that Plaintiff's negligence-based claims are subsumed or precluded by his Title IX claim.

Specifically, the cases Defendant Ithaca College cites to support that argument cannot bear the weight of the interpretation Defendant attempts to impose on them; rather, those cases merely state that the standard that must be met for a Title IX claim is different from that applicable to a negligence claim.   (Dkt. No. 18, Attach. 1, at 13-14.)   However, the fact that Title IX requires that a plaintiff prove a higher standard of culpability or notice does not inherently preclude him or her from pursuing a concurrent state-law negligence claim.   Indeed, in one of the cited cases, *Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81 (2d Cir. 2011), the Second Circuit did not indicate any inconsistency with the assertion of both a Title IX claim related to sexual harassment and a claim of negligent supervision as to that same harassment.   The only case within this Circuit that the Court was able to locate that squarely addressed this issue in fact found that a state-law negligence claim is *not* subsumed by a Title IX claim.   *Niles v. Nelson,* 72 F. Supp. 2d 13, 18-19 (N.D.N.Y. 1999) (McAvoy, C.J.).   The Court therefore finds that there is no reason Plaintiff cannot assert both a Title IX claim and negligence-based claims.

Moreover, although Defendants have made valid arguments regarding whether Plaintiff's negligence claim is duplicative of his more specific claim for negligent hiring, retention, supervision, or training, the Court declines to dismiss his negligence claim on that basis, given that the Court has already found that the claim for negligent hiring, retention, supervision, and training must be dismissed for failure to state a claim upon which relief can be granted.   Plaintiff should not be prevented from pursuing an alternative negligence claim based solely on the fact that it might be duplicative of a claim that the Court has already found that Plaintiff has failed to adequately plead.   The Court will therefore consider whether Plaintiff has stated a claim for common law negligence.

"'To establish a cause of action sounding in negligence, a plaintiff must establish the existence of a duty on defendant's part to plaintiff, breach of the duty and damages.'"   *Feaster v. Poly Prep County Day Sch.*, 227 A.D.3d 668, 670 (N.Y. App. Div. 2d Dep't 2024) (quoting *Davila v. Orange Cnty.*, 215 A.D.3d 632, 633-34 [N.Y. App. Div. 2d Dep't 2023]); *see also Wendt v. Bent Pyramid Prods., LLC*, 108 A.D.3d 1032, 1032-33 (N.Y. App. Div. 4th Dep't 2013) (formulating the "damages" portion of this standard as "that the breach of such duty was a proximate cause of [the plaintiff's] injuries").   "'The imposition of duty presents a question of law for the courts.'"   *Brown v. Univ. of Rochester*, 189 N.Y.S.3d 801, 805 (N.Y. App. Div. 3rd Dep't 2023) (quoting *Eiseman v. State of New York*, 70 N.Y.2d 175, 189 [N.Y. 1987]).

Defendants' challenges to Plaintiff's negligence claims against them firstly assert that Plaintiff has failed to adequately plead that either of them owed Plaintiff a duty to protect him from the conduct in which Defendant Roberts allegedly engaged.   In the Complaint, Plaintiff alleges that, while he was a student at Defendant Ithaca College, "Defendants were responsible for his care, well-being, and safety amongst other things, and had a duty to protect him from harm, abuse, assault, and other harms" including "from sexual abuse, as well as physical and emotional abuse while he was in the classroom and/or attending college-controlled events." (Dkt. No. 1, Attach. 1, at ¶¶ 121-22.)

### 1.      Defendant Ithaca College

Defendants are correct that "New York has affirmatively rejected the doctrine of *in loco parentis* at the college level and colleges 'generally have no legal duty to shield their students from the dangerous activity *of other students*.'"   *Luina v. Katharine Gibbs Sch. New York, Inc.*, 37 A.D.3d 555, 556 (N.Y. App. Div. 2d Dep't 2007) (quoting *Eiseman v. State of New York*, 70

27

N.Y.2d 175, 190 [N.Y. 1987]) (emphasis added).   However, this line of precedent does not

inherently foreclose a duty based on the dangerous activities of its employees.   Here, the harm

alleged by Plaintiff related to the sexual harassment and abuse/assault was not directly caused by

Defendant Ithaca College, or its students, but instead by the actions of its employees.

   "Generally, a defendant owes no duty to prevent a third party from causing harm to

another unless that defendant has the authority, as well as the ability, to control that party's

actions; the mere fact that the defendant could have exercised control 'as a practical matter' does

not create a duty to do so."   *Fay v. Assignment Am.*, 245 A.D.2d 783, 784 (N.Y. App. Div. 3rd

Dep't 1997) (citing *D'Amico v. Christie*, 71 N.Y.2d 76, 88 [N.Y. 1987]).   Notably, "[a]n

exception may occur in a case where a special relationship exists between the defendant and the

third party such as a duty to control; or alternatively, where a special relationship exists between

the defendant and the plaintiff which gives the latter the right to protection from the conduct of

others."   *Fay*, 245 A.D.2d at 784 (citing *Purdy v. Public Adm'r of Cnty. of Westchester*, 72

N.Y.2d 1, 8 [N.Y. 1988]).   "'A critical consideration in determining whether a duty exists is

whether the defendant's relationship with either the tortfeasor or the plaintiff places the

defendant in the best position to protect against the risk of harm.'"   *Ramos v. Waldbaum, Inc.*,

91 N.Y.S.3d 655, 659 (N.Y. Sup. Ct. 2019) (quoting *Davis v. South Nassau Cmty. Hosp.*, 26

N.Y.3d 563, 572 [N.Y. 2015].   Such a relationship of control exists where the third party is

employed by the defendant.   *See Ramos*, 91 N.Y.S.3d at 659 (finding that, although disability

services group did not have control over intellectually impaired tortfeasor's actions at defendant

store, the store itself, as the tortfeasor's employer, did have "the authority to change Cox's work

assignment or to terminate his employment if it had been observed that his behavior impaired the

safety" of store customers like the plaintiff); *Sokola v. Weinstein*, 187 N.Y.S.3d 493, 499-500 (N.Y. Sup. Ct. 2023) (discussing existence of special relationship between an employer and a tortfeasor-employee because "'the negligence of the employer . . . arises from its having placed the employee in a position to cause foreseeable harm, harm which the injured party most probably would have been spared had the employer taken reasonable care in making its decision concerning the hiring and retention of the employee'" and "'the duty of care in supervising an employee extends to any person injured by the employee's misconduct").

Plaintiff specifically alleges that Defendant Roberts and the other non-defendant individuals were "staff or faculty" of Defendant Ithaca College, thus plausibly alleging that Defendant Ithaca College had an employer-employee relationship with all those individuals. (Dkt. No. 1, Attach. 1, at ¶ 31.)   Defendant Ithaca College therefore had a duty to protect Plaintiff from the foreseeable harm caused by its employees to the extent it had the authority to control the actions of those employees (i.e., on campus or at other places or events where it exercised control over those employees).

The first issue that must therefore be addressed is the extent to which the alleged conduct occurred at places where Defendant Ithaca College had control over the actions of Defendant Roberts and the other non-defendant employees.   According to Plaintiff's Complaint, the initial sexual encounter between Defendant Roberts and Plaintiff occurred at Defendant Roberts' house "off campus."   (Dkt. No. 1, Attach. 1, at ¶¶ 41-46.)   It is not specified where many of the conversations Plaintiff had with Defendant Roberts through Grindr, text messages, or phone calls occurred, and Plaintiff does not allege that any subsequent sexual encounters between the two occurred on campus or during events where Defendant Ithaca College had control over

Defendant Roberts' conduct.   (Dkt. No. 1, Attach. 1, at ¶¶ 48, 55, 57, 60-63, 65, 70-73, 80, 84-85, 87.)   Allegations of conduct that did take place on the Ithaca College campus are comprised of (a) an incident on January 24th, 2022, in which Defendant Roberts allegedly "cornered" Plaintiff in the Dean's Suite, straddled Plaintiff, groped himself, rubbed his own genitals, and forcefully pinched Plaintiff's nipples, and (b) an instance in which Defendant Roberts approached Plaintiff in the Park Scholars Lounge, flirted with Plaintiff, and "attempted to initiate group sex" with Plaintiff and Mr. Stebbins.   (Dkt. No. 1, Attach. 1, at ¶¶ 54, 75.)   As to the non-defendant individuals, none of Plaintiff's allegations indicate that the alleged harassment or sexual conduct occurred on campus, only that he was uncomfortable in the dining areas where Mr. Stebbins worked.   (Dkt. No. 1, Attach. 1, at ¶¶ 77-79, 81-83, 88-89, 91-92.)   Thus, the only conduct over which Defendant Ithaca College had the authority and ability to control (and thus a duty to protect Plaintiff) were the two on-campus incidents.

        The question is therefore whether the harm caused here by these on-campus incidents would have been foreseeable to Defendant Ithaca College such that the scope of the duty extended to the conduct here.   Issues of foreseeability are "generally for the fact finder to resolve," but "courts may dismiss cases where the risks are unforeseeable as a matter of law." *In re September 11 Litig.*, 280 F. Supp. 2d 279, 295 (S.D.N.Y. 2003) (citing *Sanchez v. State of New York*, 99 N.Y.2d 247 [N.Y. 2002]).   Foreseeability "does not determine the existence of a duty, but rather, simply determines the scope of a duty once a duty is found to exist."   *Beadell v. Eros Mgmt Realty, LLC*, 229 A.D.3d 43, 51 (N.Y. App. Div. 1st Dep't 2024) (citing *Pulka v. Edelman*, 40 N.Y.2d 781, 785 [N.Y. 1976]).   Within an analogous context of the duty of a possessor of real properly to protect persons lawfully on their premises from the reasonably

foreseeable criminal acts of third parties, "'the criminal conduct at issue must be shown to be reasonably predictable based on the prior occurrence of the same or similar criminal activity at a location sufficiently proximate to the subject location.'"   *Lazarus v. Wildlife Preserves, Inc.*, 229 A.D.3d 454, — (N.Y. App. Div. 2d Dep't 2024) (quoting *Novikova v. Greenbriar Owners Corp.*, 258 A.D.2d 149, 153 [N.Y. App. Div. 2d Dep't 1999]).   Indeed, this line of reasoning makes clear that, in order to be foreseeable, there must be some degree of knowledge of prior similar conduct.   *See SCVAWCR-Doe v. Archdiocese of New York*, 206 N.Y.S.3d 518, -- (N.Y. Supreme Ct., Westchester Cnty., 2024) (discussing various cases and finding sexual assault was not foreseeable where "there is no allegation or evidence of prior conduct . . . [and] no allegation that St. Joseph's had any knowledge of any criminal conduct on the premises, or any knowledge of any risk of sexual assault to persons lawfully on the premises").   Similar rationale has been applied specifically in the context of the duty that a university owes to its students for third-party criminal conduct that occurs on campus.   *See Brown v. Univ. of Rochester*, 216 A.D.3d 1328, 1332 (N.Y. App. Div. 3rd Dep't 2023) ("We conclude that where, as here, a complaint alleges that a university received credible reports [i.e., had notice] of *ongoing and pervasive* criminal conduct against students, perpetrated on campus by other students within the university's control, the university had a legal duty to take appropriate responsive action.") (emphasis in original).

As was already discussed above, Plaintiff has not alleged facts plausibly suggesting that Defendant Ithaca College had reason to know that Defendant Roberts or any other individual was engaging in the relevant conduct and therefore the alleged conduct is unforeseeable for the same reasons that doom Plaintiff's claim for negligent hiring, retention, supervision, and training.   *See Nouel v. 325 Wadsworth Realty LLC*, 112 A.D.3d 493, 494 (N.Y. App. Div. 1st Dep't 2013)

(dismissing negligence claim both because of a lack of notice that employee had a propensity to commit sexual assault and because it was essentially duplicative of the claim for negligent hiring, retention, and supervision).   Nor are there any allegations suggesting that either Defendant Roberts or other faculty or staff have subjected students to similar conduct involving sexual harassment and/or assault in the past in the relevant areas or anywhere on campus, regardless of whether Defendant Ithaca College had notice of it.   As a result, Plaintiff has not alleged facts to plausibly suggest that Defendant Roberts' on-campus conduct and Plaintiff's resulting harm were a foreseeable consequence of Defendant Ithaca College's alleged negligence in failing to protect Plaintiff from Defendant Roberts and others, and thus any duty it had to protect students from conduct by its employees does not extend to Defendant Roberts' conduct in this instance.

The Court also notes that, in addition to the allegations regarding the duty discussed above, Plaintiff alleges that Defendants breached its duty of care to Plaintiff by negligently, carelessly, or recklessly publishing their Title IX calendar.   (Dkt. No. 1, Attach. 1, at ¶ 122.) However, Plaintiff has not included any allegations regarding whether the Title IX calendar was meant to be private but was accidentally made public, or whether the Title IX calendar is typically public in the absence of a request for privacy.   Nor has he identified any authority to suggest that such a duty to manage the privacy of the school's Title IX calendar exists under the common law, as opposed to being a contractual or statutory duty created by Title IX.   It is worth noting that 34 C.F.R. § 106.45 requires the "recipient" of a grievance under Title IX (in this case, Defendant Ithaca College) "to take reasonable steps to protect the privacy of the parties and witnesses during the pendency of a recipient's grievance procedures."   34 C.F.R. § 106.45(b)(5).

This suggests that Plaintiff's privacy concerns arise under federal statutory law as opposed to some common law duty.

Plaintiff cites *Doe v. Sarah Lawrence College*, 453 F. Supp. 3d 653 (S.D.N.Y. 2020), in which the court found a special duty arose after the defendant college "led [plaintiff] to believe that an investigation and prompt action would occur" related to her Title IX report based on the principle that "a duty may be imposed upon a college when it has encouraged its students to participate in an activity and has taken affirmative steps to supervise and control the activity." *Doe*, 453 F. Supp. 3d, at 669 (quoting *Doe v. Union College*, 19-CV-0284, 2020 WL 1063063, at *7 [N.D.N.Y. Mar. 5, 2020] [Sharpe, J.]).   The allegations in that case specifically included an allegation that, during a meeting with a Title IX investigator and the Title IX Coordinator, the plaintiff was "informed that the matter would be investigated and possible additional measures would be taken," and that the defendant college led her to believe that she had made a formal complaint that would result in an investigation and prompt action.   *Doe*, 453 F. Supp. 3d, at 660.

Here, Plaintiff alleges as follows: (a) he filed a formal complaint regarding Defendant Roberts' actions at some point after May 18, 2023, and Defendant Ithaca College's Title IX office engaged in an investigation during the Summer of 2023; (b) he saw that the "Title IX office's investigative and meeting calendar was public to all students, faculty, and staff" on June 17, 2023[8]; (c) "[u]pon seeing the public nature of the calendar, [he] immediately reached out to Defendants' Title IX office and asked that they make the calendar private"; and (d) upon his information and belief, "almost three days passed before the calendar was made private," during which time "[o]ther students began reaching out to Plaintiff, asking about the case, and rumors

---

[8]      Plaintiff does not allege what information was included on this public calendar.

33

began to flow about Plaintiff."[9]   (Dkt. No. 1, Attach. 1, at ¶¶ 101-104.)   Plaintiff has not

included any factual allegations plausibly suggesting that Defendant Ithaca College ever made

statements or gave him reason to believe that the Title XI calendar would be private that would

constitute some "affirmative step" upon which Plaintiff relied when engaging in the Title IX

process.   As a result, *Doe* does not suggest that a special duty exists in this case.

For all of the above reasons, the Court finds that Plaintiff's negligence claim against

Defendant Ithaca College must be dismissed.

### 2.     Defendant Roberts

As to Defendant Roberts, Plaintiff asserts that Defendant Roberts had, as a consequence

of his position as Associate Dean, "a duty to exercise his power over Plaintiff wisely," citing no

authority to support that assertion.   (Dkt. No. 27, Attach. 1, at 7.)   Defendant Roberts argues, by

contrast, that no duty exists because (a) New York does not recognize a duty *in loco parentis* of a

college to their students, and (b) Plaintiff has not identified any duty that he would have owed

Plaintiff as a result of his job title that he would not have owed to the general public.   (Dkt. No.

17, Attach. 1, at 9-10.)

Defendant Roberts arguments regarding the absence of any duty to Plaintiff are

unavailing.   Although Defendant Roberts is correct that New York rejects the doctrine of *in loco

parentis* as to colleges, as was discussed above, such finding indicates only that there is no

---

[9]     In his opposition memorandum of law, Plaintiff elaborates on this assertion, stating that
he was "subjected to gossip and cyber-bullying" as a result of the publication.   (Dkt. No. 26,
Attach. 1, at 15.)   The assertion of "cyber-bullying" notably is not contained within the
Complaint itself and cannot be reasonably inferred from Plaintiff's allegation that other students
"asked" him about the case, and therefore cannot be considered on this motion.   Plaintiff also
notably does not allege that the harassing messages sent to him by Defendant Roberts following
the filing of his Title IX complaint were a result of the publication of the Title IX calendar;
instead, the Complaint appears to suggest that such harassment occurred before the publication
of the Title IX calendar.   (Dkt. No. 1, Attach. 1, at ¶¶ 93-97.)

general legal duty for colleges (and presumably college administrators) to shield students from the activities of other students, not that there is no duty owed by such administrators or the college to protect the student from actions by those administrators or the college itself.

Additionally, *Hayut v. State Univ. of New York*, 352 F.3d 733 (2d Cir. 2003), does not support Defendant's argument.   (Dkt. No. 17, Attach. 1, at 9-10.)   *Hayut* involved a situation that is not wholly analogous to the allegations against Defendant Roberts: in that case, the defendant who held the position of assistant dean was not the same individual who sexually harassed the plaintiff, and the plaintiff sought to hold that defendant responsible instead for a failure to properly supervise the responsible individual under Section 1983; the negligence claim in that case was premised on the actions of the university and various administrators, and the issue of duty arose related to a failure by university employees to report sexual harassment allegations to the responsible university official.   *Hayut*, 352 F.3d at 755.   The fact that the Second Circuit found no duty to notify the university official of the plaintiff's sexual harassment complaint, investigate the allegations, or follow up with plaintiff to make sure her harm was rectified in that case does not translate to a finding that there is no duty owed by a school administrator (such as an Associate Dean) to a student in *any* situation that might occur.

Neither party has submitted any compelling argument based in relevant authority to support a finding of whether or not a duty existed as to Defendant Roberts; and the reason for that failure appears to be because Plaintiff's claim against Defendant Roberts simply does not sound in negligence.   The basis of Plaintiff's negligence claim against Defendant Roberts specifically (i.e., as an individual related to his own actions towards Plaintiff rather than as supervisor or person who can be held vicariously liable for the conduct of a non-defendant third

35

party) involves allegations of sexual harassment, threats, and nonconsensual or unwanted sexual

abuse/assault, all of which are intentional actions.   *See Allstate Ins. Co. v. Mugavero*, 79 N.Y.2d

153, 163 (N.Y. 1992) (characterizing conduct such as assault, sodomy, and sexual abuse as being

"intrinsically intentional acts" that are "totally inconsistent" with an assertion that those acts

were committed negligently or carelessly).   Because the conduct underlying this claim consists

of intentional acts, Plaintiff cannot state a cause of action for negligence against Defendant

Roberts related to that conduct.   *See Shapiro v. Jacobson*, 23-CV-3964, 2024 WL 3675943, at

*8 (S.D.N.Y. Aug. 5, 2024) (finding that intentional conduct cannot form the basis of a

negligence claim) (citing *Fernandez v. Fernandez*, 216 A.D.3d 743, 745 [N.Y. App. Div. 2d

Dep't 2023]); *accord Cummins v. Schouten*, 160 A.D.2d 1165, 1165 (N.Y. App. Div. 3rd Dep't

1990).   Plaintiff's negligence claim against Defendant Roberts therefore is dismissed.

### 3. Vicarious Liability for Negligence of Others

As part of his negligence claim, Plaintiff also asserts that both Defendants "are

vicariously liable and responsible for the acts and omissions of their employees and are

responsible for their own acts and omissions which caused, allowed, and permitted his acts of

sexual abuse and sexual assault to occur under the Corporate Complicity doctrine, as

Defendants' superior officers authorized, participated in, consented to, ratified, and/or affirmed

the conduct in question."   (Dkt. No. 1, Attach. 1, at ¶ 128.)

Although it is not apparent that Plaintiff intended to claim the vicarious liability of

Defendant Ithaca College based on the doctrine of *respondeat superior*, the Court finds that, for

the sake of completeness, any such claim would be legally insufficient because that doctrine

permits a finding of vicarious liability only for "torts committed by an employee acting within

36

the scope of the employment," and sexual abuse/assault could not be considered to be within the scope of Defendant Roberts' job as Associate Dean. *Judith M. v. Sisters of Charity Hosp.*, 93 N.Y.2d 932, 933 (N.Y. 1999); *see also Montalvo v. Episcopal Health Servs., Inc.* 102 N.Y.S.3d 74, 77 (N.Y. App. Div. 2d Dep't 2019) (noting that "[a]n act is considered to be within the scope of employment if it is performed while the employee is engaged generally in the business of the employer, or if the act may be reasonably be said to be necessary or incidental to such employment," and "[a] sexual assault perpetrated by an employee is not in furtherance of an employer's business and is a clear departure from the scope of employment, having been committed for wholly personal motives").

Plaintiff does explicitly rely on the "Corporate Complicity doctrine" as the basis for a claim of vicarious liability, but the Court notes as an initial matter that the doctrine under New York law is related only to whether punitive damages may be assessed against a corporate employer, not whether that employer is vicariously liable in the first instance. *See Benson v. Syntex Labs, Inc.*, 249 A.D.2d 904, 904-05 (N.Y. App. Div. 4th Dept. 1998); *see also Loughry v. Lincoln First Bank, N.A.*, 67 N.Y.2d 369, 378 (N.Y. 1986) ("[P]unative damages can be imposed on an employer for the intentional wrongdoing of its employees only where management has authorized, participated in, consented to or ratified the conduct giving rise to such damages, or deliberately retained the unfit servant.").   Although Plaintiff has asserted that he may intend to seek punitive damages, he cannot be entitled to any such damages unless he first establishes that the relevant Defendant(s) are liable for the alleged conduct.   Thus, to the extent that Plaintiff attempts to claim that Defendants are vicariously liable for employee conduct specifically as a result of the corporate complicity doctrine, that claim is not consistent with New York law and is

not a legally cognizable claim based on vicarious liability.

Moreover, even if such theory could sustain a finding a liability (as opposed to merely the imposition of punitive damages), Plaintiff has not alleged facts plausibly suggesting that Defendant Roberts (or any of the other alleged non-defendant harassers) constitute superior officers of Defendant Ithaca College.   Under New York law, a superior officer is "more than an agent, or 'ordinary' officer, or employee vested with some supervisory or decision-making responsibility," but rather "contemplate[s] a high level of general managerial authority in relation to the nature and operation of the employer's business."   *Loughry*, 67 N.Y.2d at 380.   "The agent's level of responsibility within the entity should be sufficiently high that his participation in the wrongdoing renders the employer blameworthy, and arouses the 'institutional conscience' for corrective action."   *Loughry*, 67 N.Y.2d at 380-81.   Instructively, the New York Court of Appeals noted in *Loughry* that a job title alone is insufficient to classify an employee as a superior officer where there is no indication of the "significance" of the employee's responsibilities in terms of relevant management for the corporate entity, and ultimately found that an individual with the title of "vice-president and manager of the real estate department and director of corporate security" was not a superior officer because there was no evidence he actually had "any significant managerial function in relation to bank operations."   *Id.* at 381.

In this case, Plaintiff's allegations that Defendant Roberts and others are superior officers appear to be related almost exclusively to their job titles: Associate Dean for Defendant Roberts, Degree Program Director for Mr. Bryant, and Associate Director for Mr. Trunzo.   (Dkt. No. 1, Attach. 1, at ¶¶ 129-31.)   In his opposition memorandum of law, Plaintiff argues that he has indeed pled that Defendant Roberts is a superior officer, because Defendant Roberts is either

"one of the highest-ranking individuals at the Ithaca College Park School" or "the head of the entire Park School" (although neither of these allegations appears in the Complaint), and because he holds the title of Associate Dean and [h]is title alone gives inference that he likely had some degree of power within the institution."   (Dkt. No. 27, Attach. 1, at 7-8.)   This reliance on the fact of Defendant Roberts' title alone and vague allegations that he had some undetermined level authority in the Park School are simply insufficient to plausibly suggest that he is a superior officer.   Plaintiff himself admits that he has little understanding of Defendant Roberts' "day-to-day duties at this early stage in litigation."   (Dkt. No. 27, Attach. 1, at 7.)   However, it is Plaintiff's understanding at this stage that matters, and it is his responsibility to allege facts plausibly suggesting the claims he has asserted against Defendants, and Defendants have no duty to provide discovery on that matter until such plausibility threshold has been crossed.

In response, Defendants have noted that Defendant Roberts is indeed not the "head of the entire Park School," but rather only one of several Associate Deans who are all overseen by the Dean of the Park School.[10]   (Dkt. No. 28, at 7.)   They further argue that, in addition to the actual Dean of the Park School, that School itself is overseen by higher-ranking College officials, such as the Provost and the President.   (Dkt. No. 30, at 6 n.1.)   Because Plaintiff has not pled any facts regarding the significance of Defendant Roberts' (or any of the other relevant individuals') responsibilities related to management of Defendant Ithaca College, he has failed to plausibly allege that any of those individuals are superior officers.   Thus, even if the corporate complicity doctrine might have any relevance related to an assertion of entitlement to punitive

---

[10]     The Court notes that it need not take Plaintiff's allegations regarding Defendant Roberts' rank in the Park School as true even at this stage because he did not include such allegations in his Complaint, but raised them for the first time in his opposition memorandum of law.   *Wright*, 152 F.3d at 178 (2d Cir. 1998); *accord Fitzsimons*, 2024 WL 221550, at *2 (citing *Soules*, 882 F.3d at 56).

damages, Plaintiff has failed to plausibly allege such claim.

For all of the above reasons, Plaintiff's negligence claims must be dismissed.

**C.      Whether Plaintiff Has Plausibly Stated Claims for NIED and IIED**

After careful consideration, the Court answers this question in the negative for his claims for NIED as to both Defendants and his claim for IIED as to Defendant Ithaca College, but in the affirmative for his claim for IIED as to Defendant Roberts.

**1.      NIED**

"To plead a negligent infliction of emotional distress claim under New York law, a plaintiff must allege (1) a breach of a duty owed to the plaintiff; (2) emotional harm; (3) a direct causal connection between the breach and the emotional harm; and (4) circumstances providing some guarantee of genuineness of the harm."  *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 81 (2d Cir. 2021).   The two ways in which a plaintiff can guarantee the genuineness of the harm are (1) showing that the defendant's breach of its duty "'unreasonably endangered' the plaintiff's physical safety," which requires "'a physical injury or the threat of danger, either to the plaintiff . . . or to a close family member," or (2) the existence of special circumstances such as "where an individual is misinformed by a medical provider that a loved one has died, where a corpse has been mishandled, or where an individual, without consent, has been videotaped using the bathroom."  *Potrzeba v. Sherburne-Earlville High Sch.*, 23-CV-0191, 2023 WL 8827178, at *12 (N.D.N.Y. Dec. 21, 2023) (Sannes, C.J.) (citing *e.g.*, *Baker v. Dorfman*, 239 F.3d 415, 421 [2d Cir. 2000]; *Green v. City of Mount Vernon*, 96 F. Supp. 3d 263, 298 [S.D.N.Y. 2015]; *Johnson v. State*, 37 N.Y.2d 378, 381-82 [N.Y. 1975]).

Plaintiff has first asserted a claim for NIED related to Defendants' failure to protect him

from "the negligent, improper, unlawful and egregious sexually abusive conduct" committed by the relevant individuals.   (Dkt. No. 1, Attach. 1, at ¶ 162.)   Contrary to Plaintiff's unsupported argument, a threat to physical safety or fear of physical harm is a requirement for pleading a NIED claim in the absence of other special circumstances that would provide some guarantee of the genuineness of his distress; his assertion that he was "traumatized" as evidenced by his participation in therapy is insufficient to sustain that burden.   (Dkt. No. 27, Attach. 1, at 11-12.) However, Plaintiff's argument that there is a physical threat inherent in forced sexual conduct is sufficient at this stage to plausibly suggest that element of the claim.   (*Id.*)

Although it is true that Plaintiff has not explicitly alleged that he feared for his physical safety or that the alleged conduct of Defendant Roberts unreasonably endangered his physical safety, he does allege that Defendant Roberts forced or coerced him to engage in physical sexual contact on multiple occasions and forced sexual contact can certainly endanger physical safety. Furthermore, although the evidence may suggest that the specific conduct did not unreasonably endanger Plaintiff's physical safety, the Court cannot say as a matter of law that forced sexual contact could not satisfy that requirement.   *See Doe v. Uber Techs., Inc.*, 551 F. Supp. 3d 341, 363-64 (S.D.N.Y. 2021) (stating that "[a] NIED cause of action may lie where the conduct at issue included 'sexual assault or battery, or threat thereof'").   Plaintiff has thus pled this element of his claim.

Whether Plaintiff has pled a claim for NIED therefore comes down to whether he has sufficiently pled the existence, and breach, of a duty.   As to Defendant Roberts as an individual, the Court notes that Plaintiff cannot sustain an NIED claim based on the alleged harassment, threats, and sexual abuse/assault for the same reason discussed above related to the generic

negligence claim, namely because those are intentional acts.   Also as was discussed previously, Defendant Ithaca College's duty to protect its students from actions of its employees does not extend to Defendant Roberts' conduct, particularly because Plaintiff has not sufficiently alleged that Defendant Ithaca College had notice that any such conduct was occurring on its campus, and thus an NIED claim cannot lie in that respect either.

Lastly, to the extent that Plaintiff has asserted an NIED claim based on an alleged duty to stop the publication of the Title IX calendar, that claim fails because Plaintiff alleges only that the breach of such duty caused him "severe emotional distress" and there are no allegations to plausibly suggest that it also unreasonably endangered his physical safety or caused him to fear for his safety.   (Dkt. No. 1, Attach. 1, at ¶ 162.)   Indeed, in his opposition memorandum of law, Plaintiff argues only that, as a result of the publication of the calendar, he was "subjected to gossip and cyber-bullying," allegations that, even if they were properly included in the Complaint, do not plausibly suggest any endangerment of his physical safety or that he was made to fear for his safety.

For the above reasons, Plaintiff's NIED claims are dismissed.

2.     IIED

A claim of IIED requires a showing of four elements: (1) "extreme and outrageous conduct"; (2) "intent to cause, or disregard of a substantial probability of causing, severe emotional distress"; (3) a causal connection between the conduct and injury"; and (4) "severe emotional distress."   *Lea v. McNulty*, 227 A.D.3d 971, 974 (N.Y. App. Div. 2d Dep't 2024) (quoting *Howell v. New York Post Co.*, 81 N.Y.2d 115, 121 [1993]).   "[C]ourts have tended to focus on the outrageousness element, [as it is] the one most susceptible to determination as a

matter of law" and is "rigorous and difficult to satisfy."   *Lea*, 227 A.D.3d at 974 (citing *Howell*, 81 N.Y.2d at 121; *Taggart v. Costabile*, 131 A.D.3d 243, 249 [N.Y. App. Div. 2d Dep't 2015]) (internal quotation marks omitted).   "To satisfy the outrageous element, the alleged conduct must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'"   *Lea*, 227 A.D.3d at 974 (quoting *Murphy v. American Home Prods. Corp.*, 58 N.Y.2d 293, 303 [N.Y. 1983]).

As to Defendant Roberts, Plaintiff asserts that is would be "absurd" to find as a matter of law that Defendant Roberts' conduct, including "pressuring a 19-year-old into sex, while threatening the student's scholarship and future," is not extreme and outrageous.   (Dkt. No. 27, Attach. 1, at 12.)   As Defendants argue in response, the conduct alleged here is somewhat analogous to that in *Coleman v. Grand*, 523 F. Supp. 3d 244 (E.D.N.Y. 2021), which the U.S. District Court for the Eastern District of New York found to not rise to the level of sustaining an IIED claim; that conduct included an older and more prominent member of the orchestra of which the plaintiff was also a member using his position of relative power to manipulate the plaintiff into a sexual relationship, and threatening her career and withholding performance opportunities from her if she withheld sex.   *Coleman*, 523 F. Supp. 3d at 266-67 (noting that the standard for extreme and outrageous conduct for such a claim is an "exceedingly high bar" to meet).

However, the Court cannot ignore that other case law indicates that allegations of sexual battery can be sufficient to constitute conduct that is extreme and outrageous.   *See Cowan v. City of Mount Vernon*, 95 F. Supp. 3d 624, 656-57 (S.D.N.Y. 2015) (finding alleged conduct to

43

be extreme and outrageous where there was both "pervasive sexual harassment" and instances of battery over a nearly year-long period, including "feeling her back, pinching her buttocks, slapping and/or squeezing her buttocks, grabbing her chest, and rubbing his crotch against her," as well as exposing his penis and blocking her from leaving a room).   Plaintiff has alleged that, in addition to pressuring him for sex, Defendant Roberts sexually assaulted and/or engaged in unwelcome sexual contact (including at least one instance of group sex) with him on multiple occasions between December 2021 and April 2023, in addition to other incidents such as "corner[ing]" and "stradd[ling]" Plaintiff in the Dean's Suite while "groping himself, rubbing his own genitals, and forcefully pinching Plaintiff's nipples" on January 24th, 2022.   (Dkt. No. 1, Attach. 1, at ¶ 54.)   His allegations therefore contain clear instances of sexual battery similar to those in *Cowan*.

In a recent case involving sexual abuse, one New York appellate court outlined "certain 'markers of outrage' that inform whether a plaintiff has identified extreme and outrageous conduct," which includes whether a defendant (a) "has abused a power or position of dominance," (b) "emotionally harmed a plaintiff known by the defendant to be especially vulnerable," and (c) "repeats or continues undesirable acts, especially when the plaintiff cannot avoid the acts."   *Brown v. Riverside Church in City of New York*, —N.Y.S.3d —, 2024 WL 3528948, at *4 (N.Y. App. Div. 1st Dep't July 25, 2024).   It is unquestionable that Plaintiff has alleged that Defendant Roberts abused a position of power or dominance, given his allegations that Defendant Roberts specifically threatened his scholarship and position in the Park School and his future employment prospects in order to pressure Plaintiff into a continued sexual relationship.   Moreover, although there is no reason to believe that Plaintiff was "especially

44

vulnerable," it is alleged that Defendant Roberts repeated his actions, including the unwanted sexual contact, for nearly two years while Plaintiff was a student, and that he approached Plaintiff at least twice in on-campus locations (once in the Dean's Suite and once in the Park Scholars Lounge) to engage in sexual contact, flirt, or attempt to initiate sexual contact with Plaintiff.   While it is true that the allegations acknowledge that Plaintiff was sometimes able to avoid such contact by refusing or leaving, the allegations that he feared consequences to his collegiate or post-graduate career by engaging in such refusals raise at least an inference that he was not able to completely avoid Defendant Roberts' alleged acts.

Based on the allegations of repeated unwanted sexual contact by an individual in a position of power over Plaintiff, the Court finds that Plaintiff has alleged facts at least plausibly suggesting that such conduct is outrageous and extreme.   The Complaint further alleges facts plausibly suggesting that Defendant Roberts disregarded a substantial probability of causing severe emotional distress, particularly through allegations that he expressed that he did not feel safe or happy and that Defendant Roberts, despite "knowing that Plaintiff's mental health was declining as a result of the abuse," continued to engage in the same conduct.   (Dkt. No. 1, Attach. 1, at ¶¶ 66-67, 70-75, 80, 84-87.)   Lastly, Plaintiff has alleged facts at least plausibly suggesting that he suffered such emotional distress , including allegations that his mental health was "spiraling" and "declining" because of Defendant Roberts' conduct, that he was experiencing distress over whether he might lose his scholarship or career opportunities, and that, in May 2022, he considered transferring schools to "get away" from Defendant Roberts and requested to graduate early; whether he would be able to substantiate such distress with medical or other evidence is not at issue at this stage.   As a result, Plaintiff has sufficiently stated a claim

of IIED against Defendant Roberts to survive the motion to dismiss.

As to Defendant Ithaca College, however, Plaintiff's allegation that Defendant Ithaca College acted in an extreme and outrageous manner by ignoring Defendant Roberts' alleged conduct cannot succeed because, as has already been discussed above, Plaintiff has not alleged facts to plausibly suggest that Defendant Ithaca College had notice of any such conduct until it was brought to the attention of the Title IX office; and Plaintiff has not alleged facts plausibly suggesting that the fact that faculty and staff were publicly using Grindr (even if Defendant Ithaca College knew about that use, something that Plaintiff has not sufficiently alleged) means that Defendant Ithaca College disregarded a substantial probability that their inaction to stop such ostensibly consensual sexual conduct constitutes a disregard of a serious risk of emotional harm to students like Plaintiff tied to sexual assault.

Further, the action of making the Title IX calendar publicly viewable for three days also does not constitute extreme or outrageous conduct under the standard described above and Plaintiff has cited no authority to suggest that it does.

Nor does Plaintiff's allegation that Defendant Ithaca College refused to conduct a Title IX investigation of the non-defendant individuals constitute extreme or outrageous conduct where Plaintiff's own Complaint alleges that (a) the official Title IX report he filed was against Defendant Roberts only, (b) he did not report details about the actions of the non-defendant individuals to Defendant Ithaca College until the Title IX investigation was already ongoing, (c) Defendant Ithaca College conducted "Human Resources investigations" into those individuals, and (d) Defendant Ithaca College ultimately found that one of the non-defendant individuals violated both its intimate relationship policy and sexual harassment policy, and that two other

individuals violated its intimate relationship policy.   (Dkt. No. 1, Attach. 1, at ¶¶ 94, 98-99,

173.)   Defendant Ithaca College clearly investigated and resolved the conduct related to the

non-defendant individuals (with one individual being fired and another resigning from his

position after being found to be in violation), regardless of the fact that they chose not to pursue

that investigation under Title IX specifically.   Such actions cannot be considered beyond all

possible bounds of decency.   For these reasons, Plaintiff has failed to allege facts plausibly

suggesting a claim of IIED against Defendant Ithaca College.

      For the above reasons, Plaintiff's claim for IIED is dismissed as against Defendant Ithaca

College, but the motion to dismiss that claim against Defendant Roberts is denied.

      **ACCORDINGLY**, it is

      **ORDERED** that Defendant Roberts' motion to dismiss (Dkt. No. 17) is **<u>GRANTED</u> in

part** and **<u>DENIED</u> in part**; and it is further

      **ORDERED** that Defendant Ithaca College's motion to dismiss (Dkt. No. 18) is

**<u>GRANTED</u>**; and it is further

      **ORDERED** that the following claims are **<u>DISMISSED</u>**:

      (1)    Plaintiff's claims for negligent hiring, retention, training, and supervision

against both Defendant Ithaca College and Defendant Roberts;

      (2)    Plaintiff's claims for negligence against both Defendant Ithaca College

and Defendant Roberts;

      (3)    Plaintiff's claims for NIED against both Defendant Ithaca College and

Defendant Roberts; and

      (4)    Plaintiff's claim for IIED against Defendant Ithaca College; and it is

further

**ORDERED** that the following claims **SURVIVE** Defendants' motions:

(1)   Plaintiff's claim for a violation of Title IX against Defendant Ithaca

College; and

(2)   Plaintiff's claim for IIED against Defendant Roberts.

Dated: September 10, 2024
         Syracuse, New York

Glenn T. Suddaby
U.S. District Judge

48